EISBRENNER v STANLEY

Docket Nos. 46108, 46109. Submitted October 20, 1980, at Detroit.—
Decided May 19, 1981. Leave to appeal applied for.

Gloria and Dennis Eisbrenner, on their own behalf, and Kari Ann
Eisbrenner, a minor, by her next friends Gloria and Dennis
Eisbrenner, her parents, brought an action for damages for
medical malpractice against William F. Stanley, D.O. The
plaintiffs claimed that Kari Ann was born severely deformed
because Mrs. Eisbrenner had contracted rubella during preg-
nancy and that Dr. Stanley had negligently failed to diagnose
the rubella. Further, they claim that had the proper diagnosis
been made Mr. & Mrs. Eisbrenner would have elected to
terminate the pregnancy at a stage where abortion was legal.
The child died shortly before trial. The Macomb Circuit Court,
Edward J. Gallagher, J., granted summary judgment to defen-
dant as to the child's claim. The parents' case was tried and a
judgment was entered on the jury verdict of no cause of action.
The plaintiff parents appealed, alleging a number of errors at
trial, and defendant cross-appealed as to the parents' cause of
action. The parents also appealed, in their capacity as represen-
tatives of their child, from the grant of summary judgment on
the child's claim. *Held:*

1. The summary judgment on the child's claim was proper.
Assessment of damages for such a cause of action would be
purely speculative.

2. The plaintiffs properly alleged proximate cause. Their
theory was that the child was born and lived as a result of the

REFERENCES FOR POINTS IN HEADNOTES

[1-3] 61 Am Jur 2d (Rev), Physicians, Surgeons, and Other Healers
§ 248.
[2] 57 Am Jur 2d, Negligence § 127 *et seq.*
[3] 22 Am Jur 2d, Damages § 204.
[4] 29 Am Jur 2d, Evidence §§ 493, 497.
[5] 5 Am Jur 2d, Appeal and Error §§ 716-718.
[6] 29 Am Jur 2d, Evidence § 687.
[7] 5 Am Jur 2d, Appeal and Error §§ 624-627.
75 Am Jur 2d, Trial § 315.

defendant's negligence. The trial court properly refused to dismiss their action.

3. The measure of damages in a case such as this should be determined using the so-called "benefits rule" whereby any benefit to the plaintiffs resulting from the defendant's negligence is to be considered in mitigation of damages. Mental distress and medical expenses are allowable items of damages.

4. Hearsay testimony which did not affect the substantial rights of the plaintiffs does not require reversal.

5. Defense counsel commented upon matters contained in the pleadings. While such matters are of record and constitute admissions, the comments amounted to improper innuendo. However, in the absence of any objection at trial, reversal on this ground is not justified where no manifest injustice has been shown.

Affirmed.

1. NEGLIGENCE — CAUSE OF ACTION — FAILURE TO DIAGNOSE DISEASE.

A child, born with birth defects, has no cause of action against a physician for the physician's failure to diagnose a disease in the child's mother where the parents have alleged that, had the proper diagnosis been made, they would have chosen an abortion rather than take a chance on the child being born defective.

2. NEGLIGENCE — PROXIMATE CAUSE — PLEADING.

Parents of a child with birth defects, in an action for negligence against a physician for failure to diagnose a disease in the mother which allegedly caused the defects, properly pled proximate cause where the parents' theory was that the failure to diagnose deprived them of the opportunity to terminate the pregnancy at a stage where abortion was legal.

3. NEGLIGENCE — DAMAGES — BENEFITS RULE.

The so-called "benefits rule", whereby any benefit to a plaintiff resulting from a defendant's tortious conduct is considered in mitigation of damages, should be applied to a case in which the parents of a child born with defects bring an action against a physician for failure to diagnose a disease in the mother which allegedly caused the defects, which failure deprived the parents of the opportunity to terminate the pregnancy; allowable damages include those for mental distress as well as medical expenses.

4. EVIDENCE — HEARSAY — RULES OF EVIDENCE.

Hearsay is a statement, other than one made by the declarant

while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted (MRE 801[c]).

5. EVIDENCE — ADMISSION OF EVIDENCE — RULES OF EVIDENCE.

Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party asserting the error is affected (MRE 103[a]).

6. EVIDENCE — ADMISSIONS — COURT RULES — RULES OF EVIDENCE.

Statements of fact contained in pleadings constitute admissions, and it is not error to allow a trial counsel to comment on statements made in the pleadings (GCR 1963, 604; MRE 801[d][2][c]).

7. APPEAL — ARGUMENT OF COUNSEL — MANIFEST INJUSTICE.

Reversal on the basis that argument of counsel constituted improper innuendo is not justified where there is no showing of manifest injustice and where no objection was made at the trial.

*Lopatin, Miller, Bindes, Freedman, Bluestone, Erlich & Rosen* (by *Steven G. Silverman*), for plaintiffs.

*Sullivan, Ranger, Ward & Bone, P.C.,* for defendant.

Before: DANHOF, C.J., and D. C. RILEY and D. L. SULLIVAN,* JJ.

DANHOF, C.J. These appeals stem from a medical malpractice action commenced by plaintiffs on March 31, 1975. Two amended complaints were subsequently filed and the nature of the action changed as parties defendant were added and dropped and different theories of liability were presented. When the case stood ready for trial in the spring of 1979, the parties consisted of plaintiffs Gloria and Dennis Eisbrenner, husband and wife, in their own behalf and as representatives of their infant daughter Kari Ann Eisbrenner, and

* Circuit judge, sitting on the Court of Appeals by assignment.

defendant William Frederick Stanley, D.O. Plaintiffs claimed that Kari Ann was born severely deformed because her mother had contracted rubella (German measles) during her pregnancy. They alleged that Dr. Stanley negligently failed to diagnose Mrs. Eisbrenner's rubella, despite the fact that he had seen test results which indicated she had contracted the disease, and that he negligently failed to warn plaintiffs of the possibility that the child would be born with rubella-caused defects. Plaintiffs contended that had defendant acted properly, he would have informed them of the risk during the first trimester of Mrs. Eisbrenner's pregnancy and the family would have decided upon an abortion rather than taking a chance on birth defects. The parents sought damages for mental distress and costs of the child's treatment. Damages were requested on behalf of the child for pain and suffering. Kari Ann had lived for over five years and died shortly before trial. The plaintiffs' complaint also alleged that Dr. Stanley had negligently delayed delivery of the child; this claim was abandoned at trial.

On April 19, 1979, defendant moved for partial summary judgment pursuant to GCR 1963, 117.2(1), claiming that the child's claim based on a "wrongful life" theory and the parents' claims for emotional trauma and expenses did not give rise to any damages cognizable at law. On May 10, 1979, the trial court issued an opinion granting summary judgment in favor of defendant as to the child's cause of action but denying the motion as to the parents' claims. The case proceeded to trial and on May 22, 1979, the jury returned a verdict of no cause of action. Plaintiffs' motion for new trial was denied and appeals to this Court followed.

In Docket No. 46108, the plaintiff parents appealed, alleging that a number of errors mandating reversal occurred during trial. Defendant cross-appealed, claiming that the trial court erred in denying his motion for summary judgment as to the parents' cause of action. Defendant also raised one issue alleging error at trial. In Docket No. 46109, the parents appealed in their capacities as representatives of the deceased child, claiming that the trial court erred in granting the defense motion for summary judgment as to the child's cause of action.

We first address the issues raised in both appeals concerning the propriety of the trial court's rulings on the summary judgment motion. In holding that the plaintiff child had no cause of action, the court stated:

"There is apparently no remedy in favor of the afflicted child for having been born under a mental or physical handicap where the alternative to such status is not to be born at all. A Plaintiff has no remedy against a Defendant whose sole offense is that he failed to consign the Plaintiff to oblivion."

However, the court ruled that the parents had stated a valid cause of action based in part upon the defendant physician's duty to disclose his disgnosis and inform the mother of the risks involved in continuing the pregnancy. Plaintiffs were held entitled to damages for both medical expenses and mental distress if they could prove their allegations. The court did state that defendant was under no duty to give counselling on the possibility of a eugenic abortion.

Michigan courts have not dealt directly with the types of actions presented in the instant case, which have sometimes been classified under the

labels of "wrongful life" or "wrongful birth". Our analysis of the decisions in other jurisdictions begins with *Gleitman v Cosgrove,* 49 NJ 22; 227 A2d 689 (1967), where the majority barred recovery by both the parents and the child. The Court first ruled that the damages claimed on behalf of the child were not really cognizable because any determination of such damages required an impossible value comparison between the child's life with birth defects and nonexistence due to abortion. The Court utilized the same type of logic in denying the parents' claim, stating that it was impossible to evaluate the human benefits of parenthood and to weigh such benefits against the alleged emotional and pecuniary injuries. The decision was also based on a public policy consideration whereby the majority viewed recognition of a cause of action for either the parent or the child as contrary to a policy favoring the preciousness of human life.

The *Gleitman* analysis relating to the child's cause of action has been followed by other courts. See *Stewart v Long Island College Hospital,* 35 App Div 2d 531; 313 NYS2d 502 (1970). However, the parents' cause of action has been recognized. *Dumer v St Michael's Hospital,* 69 Wis 2d 766; 233 NW2d 372 (1975), *Jacobs v Theimer,* 519 SW2d 846 (Tex, 1975). In *Jacobs,* the Court reversed a summary judgment in favor of the defendant physician, whose alleged negligence was predicated upon his failure to diagnose rubella during the first trimester of the mother's pregnancy and advise her of the risks to the unborn child. The Court stated that it was impossible to justify a policy which deprived the parents of information by which they could elect to terminate the pregnancy likely to produce a defective child, required

that the pregnancy be continued until a deficient child was born and then denied recovery from the tortfeasor of the costs of treating and caring for the defects of the child. The Court allowed recovery of medical expenses but refused to permit damages for emotional suffering on the ground that determination of the latter involved impermissible speculation as to the pluses and minuses of parental mind and emotion.

In *Becker v Schwartz*, 46 NY2d 401; 413 NYS2d 895; 386 NE2d 807 (1978), the Court allowed the parents of the deformed child to maintain a wrongful birth action but, as in *Jacobs*, limited the allowable damages by refusing to permit recovery for emotional suffering. The Court found the problem of determining damages fatal to the child's cause of action, stating:

"The remedy afforded an injured party in negligence is designed to place that party in the position he would have occupied but for the negligence of the defendant. * * * Thus, the damages recoverable on behalf of an infant for wrongful life are limited to that which is necessary to restore the infant to the position he or she would have occupied were it not for the failure of the defendant to render advice to the infant's parents in a nonnegligent manner. The theoretical hurdle to an assertion of damages on behalf of an infant accruing from a defendant's negligence in such a case becomes at once apparent. The very allegations of the complaint state that had the defendant not been negligent, the infant's parents would have chosen not to conceive, or having conceived, to have terminated rather than to have carried the pregnancy to term, therefore depriving the infant plaintiff of his or her very existence. Simply put, a cause of action brought on behalf of an infant seeking recovery for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence. This comparison the law is not equipped

to make. * * * Recognition of so novel a cause of action requiring, as it must, creation of a hypothetical formula for the measurement of an infant's damages is best reserved for legislative, rather than judicial, attention." 46 NY2d 412 (citations omitted).

The New Jersey Supreme Court, in *Berman v Allan,* 80 NJ 421; 404 A2d 8 (1979), partially retreated from the position it had taken in *Gleitman v Cosgrove, supra,* by recognizing the parents' cause of action for wrongful birth. The child in *Berman* was born with Down's syndrome and an action was brought by the parents and child claiming that the defendant physicians were negligent in failing to inform the mother of the availability of a testing procedure called amniocentesis, which allegedly would have revealed the existence of the genetic defects early in the pregnancy. The plaintiffs claimed injury because the mother was deprived of the option of deciding whether to have an abortion. The majority rejected the idea that the child possessed an independent cause of action, based on public policy favoring life with physical handicaps over non-life. However, in upholding the parents' right to maintain the action, the Court noted that their decision whether or not to seek an abortion during the first trimester of pregnancy was not subject to state interference, citing *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973). *Gleitman v Cosgrove* had predated *Roe v Wade.* The majority stated that the parents could recover damages for emotional distress.

Other cases recognizing the parents' cause of action but not that of the infant under similar factual circumstances include *Gildiner v Thomas Jefferson University Hospital,* 451 F Supp 692 (ED Pa, 1978), and *Speck v Finegold,* 268 Pa Super Ct

342; 408 A2d 496 (1979). There is a California case in which the child's cause of action for wrongful life was recognized. In *Curlender v Bio-Science Laboratories,* 106 Cal App 3d 811; 165 Cal Rptr 477 (1980), the child was born with Tay-Sachs disease, a genetic disorder. An action was brought in behalf of the child (the parents brought a separate action) and the complaint alleged that the defendant laboratories erred in performing and interpreting tests which were designed to reveal whether the parents carried genes which would result in their children being born with Tay-Sachs disease. The lower court sustained defendants' demurrer but the Court of Appeals reversed, holding that the child could bring the action and seek damages for pain and suffering and costs of medical care and punitive damages. The Court recited a number of factors supporting its decision, including a public policy to encourage proper medical practice in the field of genetic counselling and the principle that there should be a remedy for every wrong committed. The Court dealt with the troublesome damages issue as follows:

"The circumstance that the birth and injury have come hand in hand has caused other courts to deal with the problem by barring recovery. The reality of the 'wrongful-life' concept is that such a plaintiff both *exists* and *suffers,* due to the negligence of others. It is neither necessary nor just to retreat into meditation on the mysteries of life. We need not be concerned with the fact that had defendants not been negligent, the plaintiff might not have come into existence at all. The certainty of genetic impairment is no longer a mystery. In addition, a reverent appreciation of life compels recognition that plaintiff, however impaired she may be, has come into existence as a living person with certain rights." 106 Cal App 3d 829; 165 Cal Rptr 488. (Emphasis in original.)

We are not persuaded by the reasoning in *Cur-lender.* The defendants in that case could not have prevented the genetic defects; the only alternative for the child was nonexistence due to abortion. When only two states are possible, measurement of damages allegedly resulting because one state occurred of necessity requires comparison with the only other alternative in determining whether there was a legal detriment. In the instant case, the child's claim for damages assumes she suffered a detriment by being born defective instead of being aborted. We believe the comparison between nonexistence and deformed life is necessary but impossible to make and juries should not be allowed to speculate on the child's damages. Recognition of the child's cause of action would turn the courts into forums for pure gambling events, since damage awards could range from zero to millions of dollars based on essentially the same evidence. It would make as much sense to award damages based on a throw of the dice. We follow the reasoning in *Becker v Schwartz, supra,* and affirm the trial court's decision not to allow the child's action.

The parents' claims in the present case do not involve the impossible comparison discussed above. Defendant argues that the element of proximate cause was lacking because his alleged negligence did not cause the child's abnormalities and no treatment existed which could have prevented them. However, this argument misconstrues the plaintiff's theory. The parents claim that, because defendant breached his duty to render proper medical treatment, they were deprived of information which would have led them to terminate the pregnancy at a stage where abortion was legal. From their point of view, the child was born and

lived as a result of defendant's negligence and we believe that plaintiffs properly alleged proximate cause. The fact that plaintiffs' theory raises the specter of abortion is not significant since the abortion they allegedly would have sought was legal under *Roe v Wade, supra.* Defendant's claim that recognition of the parents' cause of action would force him to terminate the existence of human life is meritless, since he would be under no duty to perform or counsel abortion.

We hold that the trial court properly refused to dismiss the parents' cause of action and did not err by allowing them to seek damages for both medical expenses and mental distress. In *Troppi v Scarf,* 31 Mich App 240; 187 NW2d 511 (1971), this Court considered the civil liability of a pharmacist who negligently supplied the wrong drug to a woman who had ordered an oral contraceptive, resulting in the woman's becoming pregnant and giving birth to a healthy but unwanted child. The lower court dismissed the parents' action, declaring that whatever damages plaintiffs suffered were more than offset by the benefits of having a healthy child. This Court reversed, stating that there was no valid reason why the trier of fact should not be free to assess damages as it would in any other case. The panel indicated that the damages awarded should be determined under the so-called benefits rule, whereby any benefit to the plaintiff resulting from the defendant's tortious conduct is considered in mitigation of damages. Restatement, Torts, § 920, p 616. The Court held that plaintiffs could seek damages for medical and hospital expenses, lost wages, costs of rearing the child and pain and anxiety, to be offset by the value to plaintiffs of the child's services and companionship. The *Troppi* decision supports the al-

lowance of damages for mental distress in the present case and it is our opinion that the benefits rule should be applied in similar future cases.

Plaintiffs raised five other issues in Docket No. 46108. They first claim that the trial court erred in admitting hearsay testimony of Gloria Eisbrenner. Mrs. Eisbrenner had testified earlier in the trial that she contacted Dr. Stanley and expressed her fear of exposure to rubella after learning that her nephew, Tommy, with whom she had recently visited, had broken out in a rash. Defense counsel recalled Mrs. Eisbrenner during his case and questioned her about possible prior exposure to rubella, immunization, her knowledge of rubella symptoms and difficulties encountered in prior pregnancies. He began to question the witness about her earlier statements regarding her suspected exposure to rubella via her nephew. The following colloquy occurred:

"*Q.* Let me ask it this way. Was it before your sister-in-law then called and told you—

"*Mr. Lopatin [plaintiffs' counsel]:* Your Honor, may I take up something in the absence of the jury.

"(Whereupon, the jurors were dismissed.)

"*Mr. Lopatin:* I am anticipating his next question and it's rank hearsay, and I object to it. The next question is, is it before your sister told you that Tommy did not have German measles, which is hearsay.

"*Mr. Ranger [defendant's counsel]:* Not to me.

"*Mr. Lopatin:* It is to me.

"*Mr. Ranger:* I mean, it's not hearsay to this Defendant in this case. I'm not injecting my personality, your Honor, I'm saying that it's not hearsay to this Defendant."

Arguments of counsel ensued, and the trial court ultimately ruled the testimony admissible over the hearsay objection, stating:

"*The Court:* Regardless of how you tear it, the trial of the lawsuit is a search for the truth. A situation has been created in the testimony, so far as the jury is concerned, of the possibility of exposure to rubella. I think the jury is entitled to hear what she heard to the effect that she was not, and I will permit the question."

Hearsay is defined in MRE 801(c) as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. After the judge made his ruling, Mrs. Eisbrenner stated that her sister-in-law called her and told her a doctor had said that he did not think Tommy had German measles. This is a classic example of double hearsay and the trial court erred by overruling the objection. However, we do not believe that the error mandates reversal. MRE 103(a) states that error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. In the present case, part of plaintiffs' theory was that certain test results indicated that Mrs. Eisbrenner had contracted rubella and defendant negligently failed to inform plaintiffs of the results. The defense theory on this point was that while Mrs. Eisbrenner may have been exposed to rubella, she was immune to the disease and test results reflected that immunity. Plaintiffs never claimed that the nephew was the source of the alleged rubella infection; they only argued that the boy's rash was the reason Mrs. Eisbrenner consulted Dr. Stanley. It is our opinion that, because the source of the alleged rubella infection was not a disputed question at the trial, admission of the hearsay testimony did not affect the plaintiffs' substantial rights.

Next, plaintiffs argue that the trial court erred

in permitting defense counsel to read and comment on plaintiffs' pleadings during closing argument. At several points during closing argument, defense counsel made reference to the fact that plaintiffs had filed amended complaints in which the theories of liability changed and had originally named another doctor and a hospital as defendants. Plaintiffs' counsel objected on the ground that the pleadings had never been offered into evidence and the trial judge overruled the objection, stating that the files were part of the case. On appeal, plaintiffs claim that any reading from the pleadings was improper and that the argument made by defense counsel was improper because it implied that plaintiffs' case was not worthy of belief because of the amendments.

Our review of the transcript indicates that while defense counsel referred to the pleadings, he did not read them to the jury. Statements of fact contained in pleadings constitute admissions, GCR 1963, 604; MRE 801(d)(2)(C). The trial court did not err in allowing defense counsel to comment on the statements in the pleadings. *Vachon v Todorovich,* 356 Mich 182, 186-188; 97 NW2d 122 (1959).

The nature of the disputed argument presents a different question. No objection was made below on the basis that the remarks constituted improper innuendo; therefore, absent manifest injustice, reversal on this ground is not justified. *Taylor v Lowe,* 372 Mich 282; 126 NW2d 104 (1964). The argument in the present case was improper, in our opinion. Defense counsel characterized plaintiffs as parties on a fishing expedition, searching for theories of liability which would permit recovery from someone. The argument runs counter to the liberal policy of this state to allow amendment of pleadings. GCR 1963, 118. We believe the following

comments of the Supreme Court in *Ward v Reed,*
134 Mich 392, 394; 96 NW 438 (1903), are ger-
mane:

"Complaint is also made of the remarks of counsel
and, we think, justly. It is not proper to interject
irrelevant remarks, calculated, if not designed, to preju-
dice the jury upon the merits of the case. A litigant has
a right to a fair trial, and such conduct is unfair, and
should be promptly suppressed. Nearly every term of
court some case is presented where this practice has
been indulged in, and we are sometimes forced to think
that there is method in it, and that the reluctance of
the court to reverse cases, for reasons not clearly shown
to have done injury, is presumed upon, though in most
cases (as in the present) we are charitable enough to
ascribe it to overzeal, heat, or provocation by opposing
counsel. The practice is not ethical, and should be
avoided."

We decline to reverse on this ground due to the
lack of a proper objection or a request for a
curative instruction, the fact that one of the plain-
tiffs' attorneys explained the amendments in his
rebuttal argument and the fact that the jury was
instructed that remarks of counsel were not evi-
dence.

The remaining issues raised by plaintiffs involve
the trial court's decisions concerning the testimony
of expert witnesses, the admissibility of a film and
the conduct of rebuttal and surrebuttal. We have
reviewed the record and find, with one exception,
no error in the court's handling of these matters.
The exception occurred where the judge permitted
defense counsel to question Dr. Chasom during
surrebuttal about a statement of another witness,
Dr. Sillery, which had been made outside the
presence of the jury, that Dr. Chasom had agreed
that the infant's brain was a typical rubella brain.

Defense counsel asked Dr. Chasom if he had made the statement and he denied it. We conclude error occurred but that it was harmless pursuant to GCR 1963, 529.1 and MRE 103(a). The trial lasted over two weeks and the improper question was isolated. We do not believe the question and answer affected the outcome of the case.

We need not consider the other issue raised by defendant in Docket No. 46108.

Affirmed. No costs, neither party prevailing in full.