STROHMAIER v ASSOCIATES IN OBSTETRICS & GYNECOLOGY

Docket No. 58303. Submitted June 22, 1982, at Detroit.—Decided
December 20, 1982. Leave to appeal denied, 417 Mich 1072.

Brian Strohmaier, a minor, by his next friend Kathleen Stroh-
maier, brought suit in Wayne Circuit Court against the Associ-
ates in Obstetrics & Gynecology, G. A. Saunders, M.D., and
Robert M. Stewart, M.D., for "wrongful life". The plaintiff was
born with serious birth defects. The plaintiff's mother con-
tracted rubella during the first trimester of her pregnancy. The
defendant doctors allegedly neglected to advise plaintiff's
mother of the substantial possibility that the plaintiff would
suffer birth defects. The court, John R. Kirwan, J., granted
summary judgment for the defendants. The plaintiff appeals.
*Held:*

The trial court did not err in granting summary judgment
for the defendants. Michigan does not recognize a cause of
action for "wrongful life". A plaintiff's damages in such an
action, both for general pain and suffering and special extraor-
dinary expenses incurred in living with the birth defects, would
consist of the difference between his present life with the
defects and no life at all. The economic losses could not be
viewed apart from the incalculable benefit of life conferred
upon the plaintiff by the events antecedent to his birth.

Affirmed.

1. Motions and Orders — Summary Judgment.

A motion for summary judgment on the grounds that the oppos-
ing party has failed to state a claim upon which relief can be
granted tests the legal sufficiency of the party's claim; in
considering such motions, a court should consider whether the
party's claim, on the pleadings, is so clearly unenforceable as a
matter of law that no factual development could possibly justify
a right to recovery (GCR 1963, 117.2[1]).

References for Points in Headnotes
[1] 61A Am Jur 2d, Pleadings § 230 *et seq.*
[2] 61 Am Jur 2d, Physicians, Surgeons, and Other Healers § 283.
62 Am Jur 2d, Prenatal Injuries § 10.
Tort liability for wrongful causing one to be born. 83 ALR3d 15.

2. TORTS — WRONGFUL LIFE — DAMAGES.

> A child born with serious birth defects whose mother contracted rubella during the first trimester of pregnancy has no cause of action for "wrongful life" against the physicians who treated his mother for not informing his mother of the substantial possibility that he would suffer birth defects and preventing her the opportunity of having an abortion; it would be impossible to assess the child's general damages for pain and suffering or special damages for the extraordinary expenses incurred in living with the birth defects because a determination of the child's damages would consist of weighing the difference between the child's present life with birth defects and no life at all.

*Barbara M. Cash* and *Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Stanley S. Schwartz* and *Richard D. Toth),* for plaintiff.

*Sullivan, Ward & Bone, P.C.* (by *Scott D. Feringa),* and *Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Robert E. Dice),* for defendants.

Before: CYNAR, P.J., and N. J. KAUFMAN and P. R. MAHINSKE,* JJ.

CYNAR, P.J. Plaintiff Brian Strohmaier brought suit against defendants Associates in Obstetrics & Gynecology, Dr. G. A. Saunders and Dr. Robert M. Stewart for what, in effect, amounts to a claim of "wrongful life". Defendants filed a motion for summary judgment, asserting that Michigan law does not recognize such a cause of action by a child. A motion for summary judgment was also filed in the companion case brought on behalf of plaintiff's parents but was later withdrawn. A hearing was conducted, at which time defendants' motion for summary judgments was granted. Plaintiff appeals as of right.

A motion for summary judgment pursuant to

---

* Circuit judge, sitting on the Court of Appeals by assignment.

GCR 1963, 117.2(1), tests the legal sufficiency of plaintiff's claim, *i.e.,* whether plaintiff has stated a cause of action. In considering such motions, a court is to consider whether the plaintiff's claim, on the pleadings, is so clearly unenforceable as a matter of law that no factual development could possibly justify a right to recovery. *Crowther v Ross Chemical and Mfg Co,* 42 Mich App 426; 202 NW2d 577 (1972); *Todd v Biglow,* 51 Mich App 346; 214 NW2d 733 (1974), *lv den* 391 Mich 816 (1974).

In this case, plaintiff, an infant, alleges in his complaint that defendants committed acts of negligence and malpractice by failing to inform plaintiff's mother, who was then pregnant with plaintiff, that she had contracted rubella during the first trimester of her pregnancy[1] when they knew, or should have known, of the condition and in thereby not allowing her the option of terminating the pregnancy by means of therapeutic abortion.[2] Plaintiff alleges that as a direct and proximate result of the negligence and malpractice of defendants he has suffered rubella syndrome and, as a direct and proximate result thereof, he has suffered serious birth defects. Plaintiff seeks damages for the costs of medical care and treatment, the costs of special education, pain, suffering, humiliation, embarrassment, diminution of earning capacity, mental and emotional anguish, and anxiety.

---

[1] Plaintiff's mother had been a patient of defendants prior to her pregnancy and was cared for by defendants during her entire pregnancy. Plaintiff's mother was treated for the rubella symptoms by defendants, but she was never told of the possibility of having contracted rubella nor of the dangers of rubella. Defendants told plaintiff's mother that the symptoms were caused by an allergic reaction.

[2] Prior to the end of the first trimester of pregnancy, the state may not interfere with or regulate an attending physician's decision, reached in consultation with the patient, that the patient's pregnancy should be terminated. *Roe v Wade,* 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973).

Plaintiff's claim for "wrongful life" is a relatively new theory of liability nationwide. His claim, ultimately, is that he would have been better off not having been born. This cause of action has never been addressed on the merits by the Michigan Supreme Court. A recent decision of a panel of this Court, however, is noteworthy. See *Eisbrenner v Stanley,* 106 Mich App 357; 308 NW2d 209 (1981), *lv den* 414 Mich 875 (1982).

The facts involved in *Eisbrenner* were almost identical to those herein. Plaintiff mother had contracted rubella during her pregnancy, and plaintiff daughter was subsequently born severely deformed. Plaintiffs alleged that defendant doctor negligently failed to diagnose the mother's rubella, despite the fact that he had seen test results indicating the presence of the disease, and that he had negligently failed to warn plaintiff parents of the possibility that the child would be born with defects. Plaintiffs contended that, if defendant had properly informed them of the risk, the family would have decided upon an abortion rather than taking the chance of birth defects. The parents sought damages for mental distress and the cost of the child's treatment. Damages on behalf of the child were requested for pain and suffering. The child died shortly before the trial. *Eisbrenner, supra,* p 360.

In the *Eisbrenner* opinion, the panel held that, although the parents could seek damages for both medical expenses and mental distress, the child's claim did not constitute a valid cause of action. Before reaching the conclusion that no valid "wrongful life" claim existed in favor of the child, the opinion outlined the history of claims for "wrongful life" and the rationale behind decisions nationwide which have almost unanimously refused to allow the cause of action.

It is noted that there have been several recent decisions, not mentioned in *Eisbrenner,* which have denied a child's cause of action for "wrongful life". Those include *White v United States,* 510 F Supp 146 (D Kan, 1981); *Phillips v United States,* 508 F Supp 537 (D SC, 1980); *DiNatale v Lieberman,* 409 So 2d 512 (Fla App, 1982); *Moores v Lucas,* 405 So 2d 1022 (Fla App, 1981); and *Elliott v Brown,* 361 So 2d 546 (Ala, 1978). In addition, the Pennsylvania Supreme Court has affirmed a lower court's denial of the child's cause of action in *Speck v Finegold,* 497 Pa 77; 439 A2d 110 (1981), cited in *Eisbrenner, supra,* p 364.

The seminal wrongful life case is *Gleitman v Cosgrove,* 49 NJ 22; 227 A2d 689 (1967), which barred recovery for both the child and its parents. Although the New Jersey Supreme Court has since recognized a cause of action in favor of parents for wrongful birth,[3] the *Gleitman* case is still noteworthy with regard to its denial of recovery for the child. In *Gleitman,* the plaintiff child suffered birth defects as a result of his mother's exposure to German measles during the first trimester of pregnancy. The defendant doctors, who cared for the mother during her pregnancy and who were informed that she had contracted measles, neglected to advise her of the substantial possibility that the child would suffer defects. The theory of the plaintiff's suit, like that in the instant case, was that the mother might have sought an abortion had she been informed of the prenatal effect of German measles. The majority opinion in *Gleitman* affirmed a judgment of dismissal against the child on the basis that the conduct complained of, even if true, did not give rise to damages cognizable at law. *Gleitman, supra,* p 692. The

---

[3] *Berman v Allan,* 80 NJ 421; 404 A2d 8 (1979).

majority opinion in *Gleitman* noted that compensatory damages are measured by comparing the condition that the plaintiff would have been in but for the negligence with the impaired condition resulting from the negligence. The Court reasoned that it was impossible to weigh the difference between life with the suffered defects against the alternative of nonexistence.

In *Eisbrenner, supra,* a panel of this Court, following *Gleitman,* concluded that the inherent difficulty in assessing damages was reason to deny a child's cause of action for wrongful life. Still, the Court was not faced with the question of whether such a child might maintain a cause of action only for special damages.[4] Although we are certainly sympathetic to the plight of children like plaintiff, who suffer serious birth defects, we believe the reasoning of the *Gleitman* and *Eisbrenner* cases applies equally to a claim for special damages.

This Court also notes that the California Supreme Court has recently resolved a split of opinion among the California appellate courts as to whether a cause of action by a child for "wrongful life" exists. As pointed out in *Eisbrenner,* the case of *Curlender v Bio-Science Laboratories,* 106 Cal App 3d 811; 165 Cal Rptr 477 (1980), was the only case in the nation at the time of the *Eisbrenner* opinion which recognized the child's cause of action. Since that time, the California Court of Appeals handed down a decision in *Turpin v Sortini,* 119 Cal App 3d 690; 174 Cal Rptr 128 (1981), which rejected the decision in *Curlender.*

---

[4] In *Dorlin v Providence Hospital,* 118 Mich App 831; 325 NW2d 600 (1982), a panel of this Court was presented with the special damages question at oral argument. The panel summarily rejected the claim inasmuch as it had not been briefed on appeal and because the panel believed that the creation of such a new cause of action should come from the Legislature or Supreme Court.

This conflict was recently addressed by the California Supreme Court in *Turpin v Sortini,* 31 Cal 3d 220; 182 Cal Rptr 337 (1982). In a 4 to 2 opinion, the California Supreme Court permitted a cause of action for special damages. The court reasoned that such damages are readily ascertainable and that it would be illogical to permit a parent to recover special damages for a child's medical care while prohibiting the child from doing so. The court did not believe that the measurable economic losses should be offset by any benefit of existence over nonexistence. We believe that the Court in *Turpin* erred in that regard. The special damages that are claimed cannot be considered in a vacuum separate from the reality that, but for the alleged negligence, plaintiff would not exist. Plaintiff's damages, general and special, consist of the diffference between his present life with de-. fects and no life at all. Plaintiff's economic liabilities, like the daily pain and suffering he must endure, are a part and parcel of his life with birth defects. Therefore, this Court cannot view those economic losses apart from the incalculable benefit of life conferred upon plaintiff by the events antecedent to his birth. Consequently, we conclude that plaintiff's special damages are as incognizable as any general damages for pain and suffering.

We affirm the trial court's grant of summary judgment.