(No. 61359.—)

JEFFREY GOLDBERG, a Minor, *et al.*, Appellants, v. STEPHEN B. RUSKIN *et al.*, Appellees.

*Opinion filed October 17, 1986.*

CLARK, C.J., and SIMON, J., dissenting.

Albert F. Hofeld, Ltd., and William J. Harte, Ltd., of Chicago (William J. Harte and Debra O. Elder, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith and Joshua G. Vincent, of counsel), for appellees.

Beerman, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beerman, of counsel), for *amicus curiae* National Tay Sachs and Allied Diseases Association.

JUSTICE MILLER delivered the opinion of the court:

In this action for medical malpractice brought by the plaintiffs, Michael and Nancy Goldberg and their child Jeffrey, against Stephen B. Ruskin, M.D., and his employer, Strauss Surgical Group Associates, S.C., recovery was sought on the child's behalf for general damages for his wrongful life. The circuit court of Cook County dismissed that part of the plaintiffs' amended complaint for failure to state a cause of action. The appellate court affirmed the dismissal (128 Ill. App. 3d 1029), and we allowed the plaintiffs' petition for leave to appeal (103 Ill. 2d R. 315(a)).

According to the amended complaint, Dr. Ruskin served as Nancy Goldberg's obstetrician while she was pregnant with Jeffrey. The child was born April 6, 1978; later it was discovered that he was afflicted with Tay-Sachs disease, an incurable and fatal hereditary disorder. The basis alleged for the action was Dr. Ruskin's failure

during the pregnancy to administer any tests for Tay-Sachs disease or to inform the Goldbergs of the possible occurrence of the disease and the existence of tests for it. The Goldbergs asserted that they would have aborted the pregnancy had they known that the child would have Tay-Sachs disease, and in count I of the amended complaint recovery was sought on behalf of the child for his pain and suffering. In a second count, which is not involved in this appeal, the parents sought to recover the medical expenses they incurred as a result of the child's illness and damages for their emotional distress. The circuit court dismissed the first count for failure to state a cause of action and, with respect to the second count, certified two questions concerning the damages recoverable by the parents in their action against the defendants. The appellate court, with one justice dissenting, affirmed the dismissal of the child's action. In answer to the certified questions, the court also determined that the parents could state a cause of action here for medical expenses and emotional distress. The child died while the case was pending in the appellate court, and his father was named special administrator of his estate for purposes of prosecuting the appeal.

As we have said, the only issue presented in this appeal concerns the child's recovery of general damages under a wrongful life theory. The defendants have not made an issue here of the appellate court's resolution of the certified questions, and thus no question is presented concerning the parents' action in the second count of the amended complaint. The National Tay Sachs and Allied Diseases Association has submitted a brief *amicus curiae* supporting the plaintiffs' position.

In general, in an action for wrongful life a child who has been born with a disease or other disorder asserts that he would not have been born had the physician or other health-care professional in question informed his

parents that the particular ailment might occur. Also necessary to the action is, of course, the assertion that the parents would not have conceived the child or would have aborted the pregnancy if they had been given the information. (See Comment, *The Trend Toward Judicial Recognition of Wrongful Life: A Dissenting View*, 31 U.C.L.A. L. Rev. 473, 493 (1983).) The child's action should be distinguished from the parents' separate action for wrongful birth, which will arise out of the same cluster of facts but will involve distinct interests and damages. (*Cf. Cockrum v. Baumgartner* (1983), 95 Ill. 2d 193 (expenses of rearing healthy child denied to parents in "wrongful pregnancy" action brought following negligently performed sterilization operation).) It should be noted that in the child's action here compensation is sought for general damages only—his pain and suffering—and thus we do not consider here the separate question whether a child may recover medical or other special expenses associated with his disease or disorder. See *Siemieniec v. Lutheran General Hospital* (1985), 134 Ill. App. 3d 823, *appeal allowed* (1985), 108 Ill. 2d 589 (allowing recovery of special damages by child in wrongful life action).

The weight of authority refuses to permit a child to recover general damages in an action for wrongful life. (See, *e.g., Elliott v. Brown* (Ala. 1978), 361 So. 2d 546; *Turpin v. Sortini* (1982), 31 Cal. 3d 220, 643 P.2d 954, 182 Cal. Rptr. 337; *Strohmaier v. Associates in Obstetrics & Gynecology, P.C.* (1982), 122 Mich. App. 116, 332 N.W.2d 432; *Smith v. Cote* (1986), 128 N.H. 231, 513 A.2d 341; *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755; *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 386 N.E.2d 807, 413 N.Y.S.2d 895; *Speck v. Finegold* (1979), 268 Pa. Super. 342, 408 A.2d 496, *aff'd by an equally divided court* (1981), 497 Pa. 77, 439 A.2d 110; *Nelson v. Krusen* (Tex. 1984), 678 S.W.2d 918; *Harbeson v. Parke-*

*Davis, Inc.* (1983), 98 Wash. 2d 460, 656 P.2d 483; *Dumer v. St. Michael's Hospital* (1975), 69 Wis. 2d 766, 233 N.W.2d 372.) The nearly universal rejection by the courts of a child's recovery of general damages for wrongful life is based in the main on the value of life and the inherent difficulty of ascertaining a cognizable injury for which damages may be meaningfully awarded. See, *e.g., Turpin v. Sortini* (1982), 31 Cal. 3d 220, 235, 643 P.2d 954, 963, 182 Cal. Rptr. 337, 346; *Procanik v. Cillo* (1984), 97 N.J. 339, 353-54, 478 A.2d 755, 763; *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 411, 386 N.E.2d 807, 812, 413 N.Y.S.2d 895, 900.

The plaintiffs acknowledge the nearly complete absence of decisional law supporting the theory of recovery asserted by the child here, but they believe that the objections to recovery only obscure the true nature of this action, which, they say, is no different from any other suit to recover damages for pain and suffering. Attempting to confine the inquiry to familiar territory, the plaintiffs contend that the action here involves no more than compensation for the undeniable pain and suffering endured by the child as a result of his disease, and they would find here all the elements necessary to state a cause of action for negligence—duty, breach, proximate cause, and injury.

The theory of recovery asserted by the child here must be distinguished from the cause of action recognized in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348. In *Renslow* suit was brought on behalf of a child who was injured as a result of a transfusion, occurring some nine years before her birth, in which blood of an incompatible type was administered to the child's mother. Recognizing what was termed a right to be born whole, *Renslow* held that a cause of action was stated for the child's injuries, even though the child was not *in utero* at the time of the occurrence. In *Renslow*, as in

other cases alleging prenatal torts (see, *e.g.*, *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368; *Amann v. Faidy* (1953), 415 Ill. 422), the occurrence of an injury caused by the tortfeasor's conduct is clear: had the negligent act not occurred, presumably the child would have lived or been born healthy. But in this case, Dr. Ruskin's alleged failure during the patient's pregnancy to test for and diagnose the disease did not cause it to occur or make it worse, nor did his conduct prevent or hinder its treatment in any way. Thus it is not enough to say, as the plaintiffs do, that the cause of action asserted here is one simply for pain and suffering and requires no reference to the alternatives of existence or nonexistence. Rather, the actual premise for the child's action here is that he would have been better off not being born at all, and indeed in the amended complaint the child alleged a right not to be born.

For these reasons we find unpersuasive *Curlender v. Bio-Science Laboratories* (1980), 106 Cal. App. 3d 811, 165 Cal. Rptr. 477, a major prop of the plaintiffs' argument here. In *Curlender* the defendant medical laboratory gave the parents incorrect information regarding whether they were carriers of the Tay-Sachs gene; following that, the child was born, afflicted with the disease. The court held that the child and the parents could recover the costs of the child's medical expenses and that the child could recover damages for her pain and suffering. Like the plaintiffs here, the appellate court in *Curlender* believed that in making those determinations the focus could be a narrow one; in that case the court said, "We need not be concerned with the fact that had defendants not been negligent, the plaintiff might not have come into existence at all." (106 Cal. App. 3d 811, 829, 165 Cal. Rptr. 477, 488.) Although the California Supreme Court denied review of *Curlender* (see *Turpin v. Sortini* (1982), 31 Cal. 3d 220, 240, 643 P.2d 954, 966,

182 Cal. Rptr. 337, 349 (Mosk, J., dissenting)), the court later rejected, in *Turpin*, that part of the *Curlender* decision permitting the child to recover damages for her pain and suffering. *Turpin* was critical of the appellate court's attempt in *Curlender* to divorce the inquiry from any consideration of life and nonlife and said, in language that is applicable to the argument made by the plaintiffs here:

"The basic fallacy of the *Curlender* analysis is that it ignores the essential nature of the defendants' alleged wrong and obscures a critical difference between wrongful life actions and the ordinary prenatal injury cases noted above. In an ordinary prenatal injury case, if the defendant had not been negligent, the child would have been born healthy; thus, as in a typical personal injury case, the defendant in such a case has interfered with the child's basic right to be free from physical injury caused by the negligence of others. In this case, by contrast, the obvious tragic fact is that plaintiff never had a chance 'to be born as a whole, functional human being without total deafness'; if defendants had performed their jobs properly, she would not have been born with hearing intact, but—according to the complaint—would not have been born at all." 31 Cal. 3d 220, 231, 643 P.2d 954, 961, 182 Cal. Rptr. 337, 344.

We agree that the cause of action asserted here cannot be so easily compressed within the framework suggested by the plaintiffs. An action for wrongful life centers on the argument that the child would have been better off not being born at all; the objection underlying the general refusal to permit a child to recover general damages is the impossibility of entering the shadow world implicit in the suggested comparison of life with nonlife. Concurring in the majority's decision in *Gleitman v. Cosgrove* (1967), 49 N.J. 22, 63, 227 A.2d 689, 711 (Weintraub, C.J., concurring in part and dissenting in part), to deny a child's action for wrongful life, Judge

Weintraub observed:

"Ultimately, the infant's complaint is that he would be better off not to have been born. Man, who knows nothing of death or nothingness, cannot possibly know whether that is so.

We must remember that the choice is not between being born with health or being born without it; it is not claimed that the defendants failed to do something to prevent or reduce the ravages of rubella. Rather the choice is between a worldly existence and none at all. *** To recognize a right not to be born is to enter an area in which no one could find his way."

The argument that the child was in some meaningful sense harmed by being born and would have been better off not being born suggests that there is a perspective, apart from our life and world, from which one can stand and say that he finds nonexistence preferable to existence. Determining whether an injury has occurred in these circumstances is a matter outside the competence of the legal system, for, as another court has said, whether it is better not to be born at all than to be born with even the most serious illness is a question more properly left to others. (See *Becker v. Schwartz* (1978), 46 N.Y.2d 401, 411, 386 N.E.2d 807, 812, 413 N.Y.S.2d 895, 900.) In light of these considerations, judicial restraint on this subject has wisely prevailed.

Related to this are intractable problems of assessing damages for the asserted harm. Compensatory damages are intended to restore a person to the position he occupied before the occurrence of the injury complained of or to compensate the person for the loss, and in the normal case this is done by comparing the person's injured state with the condition he would be in had the injury not occurred. The tort suggested here resists analysis, however; the required comparison cannot meaningfully be made in the context of wrongful life. In suggesting that

damages in an action for wrongful life are essentially unknowable, one commentator has noted:

> "When we deal with material damage the detriment is calculated by comparing the present value of the article (or of the entire property) with that which it would have had but for the damage; *i.e.*, the difference. Even when considering non-material injury such as an attack on someone's reputation, the assessment is by comparison: the previous position, namely the ideal state of the injured person were it not for the damage, and the worsened position in which he finds himself as a result of the act for which the tortfeasor is responsible.

> In our case, however, no comparison is possible since were [it] not for the act of birth the infant would not exist. By his cause of action, the plaintiff cuts from under himself the ground upon which he needs to rely in order to prove his damage." (Tedeschi, *Tort Liability for "Wrongful Life,"* 7 J. Fam. L. 465, 483 (1967).)

To be sure, the difficulty of ascertaining damages for a particular wrong is not a reason to deny a cause of action for its redress. (See *Story Parchment Co. v. Paterson Parchment Paper Co.* (1931), 282 U.S. 555, 75 L. Ed. 544, 51 S. Ct. 248.) But the point to be made here is not that the calculation of damages for the asserted tort would be merely difficult, but rather that the task would be meaningless and impossible. Because "there is no rational way to measure non-existence or to compare non-existence with the pain and suffering of the child's impaired existence" in an action for wrongful life (*Procanik v. Cillo* (1984), 97 N.J. 339, 353, 478 A.2d 755, 763), no reasoned basis exists on which damages could be awarded. The difficulties in evaluating the harm and measuring the damage are insurmountable barriers to recovery here.

Nonetheless, the plaintiffs seek to find support for their action in the developing view that special damages may be recovered by a child in an action for wrongful

life; the damages allowed in those cases have been based on the past and future medical expenses and other special costs resulting from the child's disease or condition. (See *Turpin v. Sortini* (1982), 31 Cal. 3d 220, 643 P.2d 954, 182 Cal. Rptr. 337; *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755; *Harbeson v. Parke-Davis, Inc.* (1983), 98 Wash. 2d 460, 656 P.2d 483.) In those cases the courts have denied the recovery of general damages, however, and therefore those decisions provide little support for the plaintiffs' argument here. In distinguishing the two types of damages, the courts have emphasized that special damages in this regard are calculable while general damages are not; moreover, because the courts have held that the extraordinary medical costs and other special expenses associated with the child's ailment may be recovered by the child's parents in an action for wrongful birth, those courts have found no reason to deny to the child recovery of the same expenses. (See *Turpin v. Sortini* (1982), 31 Cal. 3d 220, 239, 643 P.2d 954, 965-66, 182 Cal. Rptr. 337, 348-49; *Procanik v. Cillo* (1984), 97 N.J. 339, 351-52, 478 A.2d 755, 762; *Harbeson v. Parke-Davis, Inc.* (1983), 98 Wash. 2d 460, 479-83, 656 P.2d 483, 495-97.) Although we do not intimate any view here regarding the recovery of medical costs and other special damages by a child or his parents in an action for wrongful life or birth, we believe the distinctions between general and special damages drawn by the courts in *Turpin, Procanik,* and *Harbeson* are telling, and we conclude that those cases provide no support for the recovery sought by the child here.

Consistent with the decisional law on this question, we hold here that a child may not recover, in an action for wrongful life, damages for pain and suffering associated with the disease or condition that underlies the action. For these reasons, then, we affirm that part of the judgment of the appellate court affirming the circuit

court's dismissal of count I of the plaintiffs' amended complaint.

*Judgment affirmed.*

CHIEF JUSTICE CLARK, dissenting:

I respectfully dissent.

This court has no duty to decide philosophical issues. It has a duty to decide cases. The majority, unfortunately, enmeshes itself in a philosophical issue which it has no competence to resolve to the exclusion of a case, that of the deceased infant, Jeffrey Goldberg, which cries out for redress.

The majority does not dispute that the allegations of the complaint, which on a motion to dismiss we must assume to be true, make out a classical case of negligence. Defendants failed to inform Jeffrey Goldberg's parents of the possibility that their child would be born with Tay-Sachs disease, or the existence of tests which would demonstrate that he had the disease. The Goldbergs allege that had they been so informed, they would have availed themselves of the tests, and had they known that Jeffrey would be born with the disease they would have aborted the pregnancy.

The majority reasons that the action should not be allowed because (1) Jeffrey suffered no legally cognizable injury, and (2) the injury, even if legally cognizable, cannot be measured. Neither contention, in my opinion, is correct.

The majority's argument against the cognizability of injury rests upon philosophical considerations which, frankly, I do not understand. Granting damages would mean acceptance of the argument "that the child would have been better off not being born at all," and would entail the "impossibility of entering the shadow world implicit in the suggested comparison of life with non-life." (113 Ill. 2d at 488.) Therefore, determining

whether an injury has occurred in these circumstances is a "matter outside the competence of the legal system." 113 Ill. 2d at 489.

I would agree with the last statement if, by it, the majority means that we are incompetent to determine, in some ultimate ontological sense, whether Jeffrey Goldberg's life was worth living. What the majority fails to recognize, however, is that a judgment against liability also enters the "shadow world" of comparison between life and nonlife. By its decision today, the court implicitly decides that Jeffrey Goldberg was better off enduring a life of pain, blindness, deafness, paralysis, seizures, and mental retardation, inevitably ending in early death, than not living at all. The court is no more or less competent to render that judgment than to render any other.

Given the nature of the birth defect involved in this case, nonlife may have been preferable to life. Tay-Sachs disease is a fatal genetic disorder that occurs in some children and causes the gradual degeneration of the central nervous system. While the child appears normal at birth, symptoms inevitably appear before the child reaches 8½ months. At first the child is noticeably lethargic and development of his motor skills begins to decline. In addition, the Tay-Sachs child now becomes hypersensitive to noise. Between 12 and 24 months the child becomes blind, experiences petit mal seizures lasting for several seconds, is unable to eat because of the deterioration of his respiratory and digestive systems, and loses muscle strength. By the beginning of the third year, the child is blind, retarded, deaf, and completely paralyzed. By 40 months, most Tay-Sachs children will die of infections or other complications caused by Tay-Sachs. (Paritzky, *Tay-Sachs: The Dreaded Inheritance*, American Journal of Nursing 260, 260-64 (March 1985).) The majority provides no support for the notion that such a short life of excruciating pain, devoid of any re-

deeming benefits, is preferable to nonlife.

As Justice Rizzi wrote in his dissent in the appellate court:

> "[T]he sober reality with which we, as judges, must come to grips is that Jeffrey Goldberg endured immense pain and suffering that he would not have had to endure had defendants not been negligent. To hold that he was not injured as a result of defendants' negligence not only shunts reality but also imposes a cruel hoax upon the people involved in these tragic circumstances." 128 Ill. App. 3d 1029, 1045 (Rizzi, P.J., dissenting).

It is surely small comfort to the child to know that the majority believes his life was worth living.

Moreover, the majority's reliance upon a philosophical bar to wrongful life actions does not find support in some of the very decisions the majority cites. For example, while stating a position consistent with the majority's view on the incalculability of general damages, the California Supreme Court rejected any philosophical bar to the award of extraordinary damages. The court reasoned:

> "Although it is easy to understand and endorse these decisions' desire to affirm the worth and sanctity of less-than-perfect life, we question whether these considerations alone provide a sound basis for rejecting the child's tort action. To begin with, it is hard to see how an award of damages to a severely handicapped or suffering child would 'disavow' the value of life or in any way suggest that the child is not entitled to the full measure of legal and nonlegal rights and privileges accorded to all members of society.
>
> Moreover, while our society and our legal system unquestionably place the highest value on all human life, we do not think it is accurate to suggest that this state's public policy establishes—as a matter of law—that under all circumstances 'impaired life' is 'preferable' to 'nonlife.' " *Turpin v. Sortini* (1982), 31 Cal. 3d 220, 232-33, 643 P.2d 954, 961-62, 182 Cal. Rptr. 337, 344-45.

The majority is of course correct that the preponderance of authority opposes the award of general damages for wrongful life. But it is worth noting that there is a growing body of persuasive opinion to the contrary. (See *Turpin v. Sortini* (1982), 31 Cal. 3d 220, 643 P.2d 954, 182 Cal. Rptr. 337; *Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755; *Harbeson v. Parke-Davis, Inc.* (1983), 98 Wash. 2d 460, 656 P.2d 483.) Moreover, some lower courts have awarded general damages for wrongful life. (See, *e.g., Curlender v. Bio-Science Laboratories* (1980), 106 Cal. App. 3d 811, 165 Cal. Rptr. 477.) Many commentators also advocate recognition of the tort. (See, *e.g.,* Kashi, *The Case of the Unwanted Blessing: Wrongful Life,* 31 U. Miami L. Rev. 1409 (1977).) Finally, decisions to deny general damages have often drawn vociferous dissents. See, *e.g., Turpin v. Sortini* (1982), 31 Cal. 3d 220, 240, 643 P.2d 954, 966, 182 Cal. Rptr. 337, 349 (Mosk, J., dissenting); *Procanik v. Cillo* (1984), 97 N.J. 339, 363, 478 A.2d 755, 768-69 (Handler, J., concurring in part and dissenting in part).

Moreover, imposition of liability in this case would have real and practical benefits. It would further the usual purposes of tort law: allocation of risk, compensation and deterrence. Recognition of liability here would allocate the costs of negligent genetic screening to the party who receives the financial benefit from medical supervision of pregnancy, the attending physician. It would deter the provision of inaccurate advice. It would compensate the victim for his suffering, in circumstances where that suffering prevents him from deriving any tangible benefit from his own existence. Moreover, these benefits must be weighed against the consequences of the majority's decision. From today, physicians will have less incentive to give careful advice to parents faced with the difficult (and constitutionally protected) decision of whether to abort a child who may, as in this case, be born to a very short life of excruciating

pain.

Moreover, I do not agree with the majority's conclusion that damages are inherently unascertainable. The plaintiffs propose that the trier of fact assess the burdens attributable to the child's birth with congenital defects against the benefits the child can derive from life despite the defects. (See Rogers, *Wrongful Life and Wrongful Birth: Medical Malpractice in Genetic Counseling and Prenatal Testing*, 33 S.C.L. Rev. 713, 738 (1982).) In any case in which those benefits outweighed the burdens, there would be no recovery. In any case in which the burdens outweighed the benefits, the recovery would be that amount by which the trier of fact found the burdens exceeded the benefits.

Such a calculation would be no more difficult than the calculation of damages for loss of society, or, for that matter, the calculation of any award for pain and suffering. In the case of Jeffrey Goldberg, afflicted with Tay-Sachs, the trier of fact might be justified in finding that the burdens of a life which consists of four years of excruciating physical pain and mental retardation do not exceed its benefits. In the case of a person afflicted with congenital blindness or deafness, the trier of fact might be justified in finding otherwise.

Given widespread medical knowledge of Tay-Sachs, and the fact that it is confined to Ashkenazic Jews of eastern European origin, a trier of fact might well determine that a physician would be negligent in failing to inform parents of Jewish ancestry that their child might be born with Tay-Sachs. In any case, the extent of medical knowledge about the disease, as well as the costs and risks of fetal testing, need not be addressed on a motion to dismiss.

I would reverse the judgment of the appellate court, and therefore I dissent.

JUSTICE SIMON joins in this dissent.