Chief Judge Fuld.
On a rainy afternoon in the spring of 1967, six-year-old Kathy Gleich was struck by a car driven by defendant Philip Volpe and sustained serious injuries; at the *520 time she was crossing the road in front of a stopped school bus, from which she had just alighted, on her way to her home directly opposite the bus stop. Her father, Henry .Grleich, brought suit, on her behalf and on his own, against the school district — for negligence in placing the bus stop where it did — and against Volpe. Verdicts were obtained against these-defendants — for $50,000 in favor of Kathy and for $8,000 in favor of the father. Although the jury sought to apportion damages — 70% against defendant Volpe and 30% against the school district—the trial judge directed entry of judgment against both defendants for the full amount awarded each plaintiff. The Appellate Division unanimously affirmed, and this court granted leave to appeal.
The road on which the bus stop was located, Boute 28A in the Town of Hurley, was hilly and winding. Approaching the bus stop from the east, as both the bus and Volpe did, there was a hill and curve a short distance behind the stop and then the road was straight for about a couple of hundred feet. Volpe, who lived some two miles beyond the point of the accident and was very familiar with the road, was on his way home from work. Although it was, as already noted, raining, he approached the bus stop at a speed of between 40 and 50 miles an hour. When he saw the bus with lights flashing, he jammed on his brakes. They failed; attempting to “ gear down” the car, he ripped out the transmission. He pulled to the left of the vehicle to avoid colliding with it and, continuing in the eastbound lane, hit Kathy, who was crossing with a group of children. Volpe ended up in a ditch on his left. The reason for the brake failure was not defective brakes — they were working properly up to the time of the accident—but a “ blow-out ” of a flexible hose in the brake line system which probably occurred when the brakes were suddenly and forcefully applied to a 4,000-pound Cadillac traveling at least 40 to 50 miles an hour.
The sole basis for the claim of negligence on the part of the school district was the assertedly unsafe location at which the bus stop was established. On that issue, the testimony of both the plaintiff’s expert and Volpe’s was that, in the case of a driver approaching the stop from the east at a speed of about 40 or 50 miles an hour, there is an insufficient advance view of the bus stop for the driver to react and bring the vehicle to a stop before reaching it. Their testimony, however, offered no alter *521 native stop on this winding, hilly road which would, under all of the surrounding circumstances, be preferable or safer.[1]
On the other hand, the assistant superintendent of deféndant school district—the individual charged with establishing school bus routes and stops — testified to the many considerations, in addition to visibility, that had to be taken into account. In the first place, the bus route on that road had initially been established, and approved by the Commissioner of Education (Education Law, § 3622), at the request of Mrs. Grleich (the infant plaintiff’s mother), whose children would otherwise have been required to walk east around the curve and down the winding hill to an intersection with a road on which the bus route was then located. There was, it is true, greater visibility at a point farther west on Route 28A than the existing bus stop. However, had the children been dropped off west of the G-leich residence, they would have had to cross the road—the regulations require that the children cross in front of the bus — and walk with their backs to eastbound traffic. Not only were there no sidewalks along this country road but “ during the winter there would be no shoulder [on which to walk] because of the plowing operations ’ ’ which piled the snow high on either side. In the second place, there was evidence that, at no point on this stretch of winding road would an average driver, going 40 to 50 miles an hour, have completely adequate visibility from both directions and that buses would have difficulty starting and stopping on a steep hill, especially in the winter when the roads were icy. In selecting the particular bus stop here involved, the district’s assistant superintendent testified that he sought the location where [1] ‘ we could get the children on and off the bus in the safest possible manner ” and, to accomplish that in this instance, the stop was placed “ as far forward” from the curve as was deemed ‘ ‘ feasible * * * so that the children *522 didn’t have to walk along the highway In addition, it is of consequence that school districts have no authority to regulate traffic or to place traffic signs or markers on any highway (Vehicle and Traffic Law, § 1114).
Although we agree with the Appellate Division that the record fully supports a finding of negligence on the part of the defendant Volpe, we perceive no basis for the decision below that the school district should be held liable.
“ No person ”, the Vehicle and Traffic Law (§ 1180, subd. [a] ) recites, “ shall drive a vehicle at a speed greater than is reasonable and pindent under the conditions and having regard to the actual and potential hazards then existing ’ ’, and subdivision (e) of section 1180 goes on to specify, with greater particularity, that, “ [t]he driver of every vehicle shall, consistent with the requirement of subdivision (a) of this section drive at an appropriate reduced speed * * * when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, and when any special hazard exists with respect to pedestrians, or other traffic by reason of weather or highway conditions.” Certainly, with these guidelines in mind, the verdict against Volpe was thoroughly justified. He was driving on a wet, hilly, winding road at a speed which required him to brake with such force as to blow out the hose in the brake line system in order to avoid hitting the bus. Regardless of whether he was exceeding the speed limit or whether the curve was negotiable at 50 miles an hour, the speed at which he was traveling was undoubtedly excessive for the driving conditions in which he found himself. It is plain, too, that he was going too fast to stop his car within the distance he could see ahead of him. Indeed, he could hardly have been unaware that the school bus, which carried his own children, would be stopping in the vicinity about that time of day. There was, therefore, ample warrant for the determination that he was negligent.
However, as already stated, we reach a different result with respect to the school district. Even'though the present is not a situation where the courts are precluded from questioning an “ exercise of expert judgment in the course of government planning for the public safety ” (see, e.g., Weiss v. Fote, 7 N Y 2d 579, 587), there is absolutely no evidence in the record before *523 us from which a jury could reasonably find that the school district was negligent in its placement of the bus stop. Evidence of insufficient visibility for cars coming from the east certainly does not, in and of itself, warrant such a finding. All the factors involved in establishing a bus stop, not merely visibility, must be taken into account. The school district recognized that it was faced with, the problem of establishing the “ safest ” bus stop “possible” in an area where no location was absolutely safe. The road was described, in the words of the plaintiffs’ own expert, as a “ meandering rural road * ® * in the sense that along that route in that general area it has numerous curves to the left and to the right, numerous upgrades and downgrades,” with a total width of the paved portion of 20 feet. And there is no contradiction of the testimony of the district’s assistant superintendent that the stop had been placed as far west of the curve as possible without subjecting the children to the hazards of walking with their backs to traffic. A more westerly placement of the stop, moreover, would decrease the visibility of cars approaching the stop from the west. In short, there was no other place the stop could have been situated without exposing the school district to the same or a graver charge of negligence than the location which it had selected.
It might be urged that the school district officials, who could not themselves place warning signs along the road, should have requested highway officials to erect such signs and that they were negligent in failing to do so. It is enough to note that the trial court did not, and was not requested to, charge the jury to that effect. Actually, it is difficult to believe that the absence of signs could have constituted a proximate cause of the accident in any case in light of Volpe’s familiarity with the road. If the known hazards he faced on that wet and steep curve did not cause him to drive carefully so as to avoid just such an accident as occurred, there is little reason to believe that the presence of a sign would have had a contrary result.
Finally, we find no error in the trial court’s determination to award the plaintiffs the full amount of their respective verdicts against both defendants instead of accepting the jury’s apportionment of damages between them. (See, e.g., Klepper v. Seymour House Corp., 246 N. Y. 85, 98; Carrig v. Oakes, 260 *524 App. Div. 989, affg. 173 Misc. 793; cf. Garson v. Macy & Co., 303 N. Y. 918; Toth v. Kennedy & Smith, Inc., 285 N. Y. 579; Kinsey v. Spencer & Son Corp., 281 N. Y. 601; see, also, Ann. 46 ALR 3d 801.)
The order appealed from should be modified by reversing, as to appellant Board of Education of Central School District No. 1, and dismissing the complaint against said appellant and, as so modified, affirmed, with costs to plaintiffs-respondents against defendant-appellant Volpe on his appeal.
Judges Bueke, Breitel, Jasen, Gabrielli, Jones and Wachtler concur.
Order modified in accordance with opinion herein and, as so modified, affirmed, with costs to plaintiffs-respondents against defendant-appellant Volpe on his appeal.

. One expert did testify that it would be preferable, and possible, to have the school bus travel only in one direction—from west to east — so that the bus would always stop on the same side of the road as the Grleich residence. The school district’s assistant superintendent testified, however, and his testimony seems eminently reasonable, that, because of the length of the route and the large land area to be covered, it was impossible to lay out the route so that the children could avoid having to “ cross the road ” either going toward or away from the school.