Wachtler, J. (dissenting).
In this action for personal injuries sustained by the infant plaintiff, we are asked to consider whether a school district may be liable for negligently designating a school bus stop which is unsafe in relation to the ability and competence of the children to reach their destination. Our view is that the safe placement of a school bus stop should not be considered solely in terms of the inherent safety of the actual discharge point. A school district could reasonably foresee that the children will proceed from that spot to their homes or to the school, respectively. Thus, the safe placement of a school bus stop should be evaluated in light of many factors including the child’s ability to proceed from the discharge point to his destination without being exposed to hazards which are beyond his competence to negotiate.
This reasoning is supported by our holding in Gleich v Volpe (32 NY2d 517) where we held that a school district could be held liable for negligently placing a school bus stop in an unsafe place provided there were alternative locations for situating the bus stop which were safe. This evaluation was considered to be a question of fact for the jury to deter *565 mine in light of all the factors involved in establishing a bus stop (p 523).
The record before us establishes that at the time of the accident, Lorraine Pratt was seven years old and attended first grade in the Rochester school system. She was enrolled in a school which because of its location necessitated that she ride a school bus. The defendant school district did not endeavor to provide door-to-door service, but established bus routes to accommodate the students. The actual procedure in designating bus stops to particular students was to compile a list of all pupils to be bused, together with their addresses and their school. The next step was to indicate the precise location of the various addresses on the map. About two weeks before school started, the parents were notified of the school bus stop and the pick-up time for their children.
Plaintiff and seven others, including her two brothers, were assigned to a bus stop located at the corner of Seward Street and Columbia Avenue. This stop was three blocks west of Plymouth Avenue, which is a main thoroughfare of six lanes. All eight children lived east of Plymouth Avenue and upon returning from school it was necessary for them to walk east on Columbia, cross two minor streets and then cross Plymouth Avenue. At this point Plymouth Avenue is not controlled by a traffic signal, nor was a crossing guard assigned to assist the children in crossing this busy urban thoroughfare. The bus driver testified that at the time of the accident after releasing the children at Columbia and Seward it was his route to travel east on Columbia until it reached Plymouth and the bus turned left and proceeded toward its next stop. This route took the bus directly past the side streets on which were located the homes of the eight children who had been discharged previously. The proof at trial also established that this bus was operated by a bus driver and a bus attendant whose job it was to get off the bus at all stops and to walk the children across the street. This latter task was to be done by walking four or five steps ahead of the bus and after checking both ways for traffic walk the children across the street. On the day of the accident the regular bus attendant was absent and no substitute was provided.
On April 10, 1970 Lorraine and the other children were discharged from the bus at the corner of Seward and Columbia and walked along Columbia until they reached Plymouth. They reached the dangerous intersection at the same time as *566 the school bus. As a matter of fact, the bus driver watched as the Pratt boys crossed Plymouth. When Lorraine attempted to cross, the bus was between Lorraine and the traffic coming from the north and the bus driver noticed a truck rapidly approaching and honked the bus horn to warn her. Unfortunately, she was struck by the truck and seriously injured.
The evidence presented at trial also indicated that there were several safe locations along the east side of Plymouth Avenue, where the bus stop could have been placed, and that plaintiffs parents had complained on several occasions to no avail concerning the danger presented by the compelled crossing of Plymouth Avenue.
The majority concedes that once the school district undertook to transport the children by school bus, it became obligated to do so in a reasonably prudent manner. Therefore the lack of any statutory duty to provide transportation and the fact that the Pratts elected to send their seven-year-old daughter to a school which because of its location necessitated that she ride a school bus are completely irrelevant. Similarly, the contention that she would have had to cross Plymouth Avenue if the school had been located at Seward and Columbia is of no consequence. Although this argument is superficially appealing it ignores the fact that the geographic location of a school building is not subject to change while a bus route is. The critical factor is that the school district endeavored to provide bus transportation. Once they accepted that task they became obligated to perform it in a reasonably prudent manner. The sole issue before us then is to ascertain the extent of the school district’s duty.
In formulating this duty the majority concludes that it ceases when the child disembarks from the school bus. However, this approach is contrary to modern tort principles which define the extent of a duty in terms of foreseeability (Prosser, Torts [4th ed], § 43). In this case we believe that a jury could have found that the school district should have reasonably foreseen the dangers involved in placing the stop west of Plymouth when it knew all eight children who disembarked at this point lived on the east side of this busy thoroughfare. Moreover, the degree of care to be exercised must be determined in light of the childrens’ youth or lack of ability. Certainly children of tender age or those who are handicapped should not be expected to be aware of and capable of handling the same potential dangers as older and *567 more physically competent students. Here the plaintiff was only seven years old and was expected to cross a wide busy avenue. Yet the majority asserts that the duty ceased when they let the children off in a place which was a safe discharge point. This disregards the fact that the child has to move. To carry the majority’s reasoning to the extreme, there would be no breach of duty if the bus discharged the children at a patently safe place on a median between the lanes of an expressway. We cannot accept such a rule and maintain that the school district’s duty must be evaluated by the jury in light of the childrens’ age and competence and the feasibility of alternative safe locations.
The majority also emphasizes the fact that her brothers, ages 9 and 13, were instructed by their father to help Lorraine cross the street. We find it difficult to fathom how telling her siblings, who were also of tender years, to assist her could as a matter of law replace the school district’s duty.
Nor do we believe that there is validity to the majority’s assertion that a change in the bus stop would have wrought havoc with the entire busing program. In the first place there is nothing in the record to support that conclusion. Secondly, Mr. Clemons, the bus operations expediter, testified that bus stops were frequently changed during the school year in response to parental complaints and emergencies. Once a bus route is drawn it is not chiseled in stone, rather it is flexible. Indeed, the instant route had been changed several times during the school year. Moreover, it seems unlikely that such a change would have caused a significant time loss in view of the testimony of the driver that the bus normally proceeded along Columbia to Plymouth and then past the childrens’ homes. Nor would a stop on Plymouth Avenue have interfered with traffic because the children would have only had to cross that road once a day rather than twice and the bus’ flashing lights would have insured safe passage (Vehicle and Traffic Law, § 1174, subd [b]; see Van Gaasbeck v Webatuck Cent. School Dist. No. 1, 21 NY2d 239).
In view of the foregoing we believe that the extent of the school district’s duty in light of the childrens’ age and competence and the reasonably foreseeable consequences of locating the bus stop so as to necessitate crossing a major thoroughfare was a question of fact for the jury (Gleich v Volpe, 32 NY2d 517, supra).
Even were we to agree with the majority that the school *568 district was not responsible for the children once they disembarked we would still feel compelled to reverse. Here it is undisputed that it was the school district’s practice to alter bus routes in response to parental complaints or emergencies. Moreover, the school district admitted that Plymouth Avenue was a dangerous thoroughfare and that it received at least three telephonic complaints from Lorraine’s parents. Nevertheless the school district did absolutely nothing. They did not even investigate the situation. If they had they would have realized that all the children released at that stop lived on the other side of Plymouth and that the school bus proceeded past the childrens’ homes. On the basis of these facts a jury could have found that the school district breached a duty to plaintiff by failing to reassess the bus route, particularly where the change would not involve a great expenditure of time or money.
Accordingly, it was improper for the trial court to dismiss the complaint prior to submitting it to the jury and the matter should be reversed and a new trial granted.
Chief Judge Bkeitel and Judges Jasen and Jones concur with Judge Fuchsberg; Judge Wachtler dissents and votes to reverse in a separate opinion in which Judges Gabrielli and Cooke concur.
Order affirmed, with costs.