Robert WILSON, et al.,
Plaintiffs–Appellants,

v.

Donald E. KUENZI, M.D., et al.,
Defendants–Respondents.

No. 69592.

Supreme Court of Missouri,
En Banc.

April 19, 1988.

Concurring Opinion of Judge Blackmar
May 17, 1988.

Rehearing Denied May 17, 1988.

William T. Bernard, Kansas City, Mo.,
for appellants.

Harald L. Fridkin, Charles H. Stitt, Kansas City, Mo., for respondents.

WELLIVER, Judge.

This cause involves civil actions for damages for wrongful birth brought by Carl and Barbara Wilson on their own behalf and for wrongful life brought by Barbara Wilson as mother and next friend of Robert Wilson, a minor. The appeal is from an order of the Jackson County Circuit Court dated June 8, 1987, dismissing both causes of action pursuant to respondent's Motion To Dismiss filed April 14, 1987. The dismissal was based on the language of § 188.130, RSMo 1986, effective August 13, 1986, and appeal was to this Court because of the constitutional issues raised concerning the statute. Mo. Const. art. V, § 3. Although determination of this cause may not necessitate reaching the constitutional issues, we decide the cause because of its general interest and importance. Mo. Const. art. V, § 10. We affirm the action of the trial court dismissing the actions, but we do so for different reasons.

Prior to adoption of the statute in question, identical motions to dismiss had been filed and overruled on May 31, 1985.

I

Appellant Barbara Wilson was age 36 at the time of conception and age 37 at the time of the birth of Robert Wilson on June 23, 1983. Robert was born afflicted with a

genetic disorder commonly known as Down's Syndrome. The risk of such birth defect is approximately 1 in 1000 for women in their twenties, and escalates to approximately 1 in 300 for a woman age 36. It is not disputed that such a defect can be detected by a test known as amniocentesis, administered in the fourteenth week of pregnancy or thereafter, and that respondent doctor neither told appellants of the availability of such test nor counseled appellants regarding the chances of the baby being born with such birth defect by reason of appellant mother's age. Appellants allege that the mother was therefore denied the ability to make an informed decision to abort the pregnancy, which she alleges she would have done, had she been advised of the fact that the fetus was afflicted with the disorder. The wrongful life action of the minor relies on the assumption that the mother would have aborted the fetus and that he would not have been born. Both causes of action allege that it was negligence of the respondent doctor to fail to advise the appellant mother of the availability of the amniocentesis test, or to order such test, and to counsel her as to the results of the test so that she could make an informed decision as to whether or not to have an abortion. For the purpose of these motions we assume that experts would testify that today a physician, following acceptable standards of practice in caring for a 36 year-old pregnant woman, should advise the mother of the availability of the test and counsel her accordingly, leaving the mother the responsibility of deciding whether or not she will abort the pregnancy.

The 1986 statute relied on by the circuit court reads as follows:

1. No person shall maintain a cause of action or receive an award of damages on behalf of himself or herself based on the claim that but for the negligent conduct of another, he or she would have been aborted.

2. No person shall maintain a cause of action or receive an award of damages based on the claim that but for the negli-

gent conduct of another, a child would have been aborted.

Section 188.130, RSMo 1986.

Clearly Section 1 intends to preclude wrongful life actions and Section 2 intends to preclude wrongful birth actions.

## II

■ Our reading of § 188.130, RSMo 1986 discloses no legislative intent on its face that the statute have retrospective application. In general, statutes are not applied retrospectively. The Missouri Constitution, Article 1, § 13, prohibits retrospective application of a statute unless there is clear legislative intent to give it retrospective operation either by express language or by implication, and the statute is procedural only and does not affect any substantive right of the parties. *Pipe Fabricators, Inc. v. Dir. of Rev.*, 654 S.W.2d 74, 77 (Mo. banc 1983); *Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982); *State ex rel. St. Louis–San Francisco Railway v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974). The effective date of the statute being August 13, 1986, the statute has no application to this case.

## III

The question confronting the court is whether Missouri would have recognized these causes of action in 1983, some three years prior to adoption of the statute. This Court has not directly addressed either the action for wrongful birth or the action for wrongful life. Denying the motion for rehearing or transfer, we did permit a suit for "wrongful conception" to stand in *Miller v. Duhart*, 637 S.W.2d 183 (Mo.App. 1982).

Most of the cases in this field have come down in the last two decades, primarily since *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) and its partial legitimization of abortion. All of the cases can be found and are thoroughly discussed, in five law journal and law review articles published since 1980.[1]

---

1. Note, *Wrongful Birth Actions: The Case*   *Against Legislative Curtailment,* 100 Harv.L.Rev.

Although the two actions, wrongful life and wrongful birth, sound synonymous, they differ significantly. The wrongful life action is brought solely by or on behalf of the child who sues for damages stemming from the fact of his or her birth on the theory that were it not for the negligence of the defendant, he or she would not have been born. The action for wrongful birth is an action brought by one or both of the parents of a child born as the result of some form of negligence of the defendant. The damages generally alleged are for pain and suffering, emotional distress, loss of consortium, loss of wages, medical expenses and the cost of raising the child.

## A

### The Wrongful Life Action

■ In a comprehensive article reviewing "The Defective Child and The Actions For Wrongful Life and Wrongful Birth," it was the conclusion of the author that "[t]o date, the wrongful life action has met with no success" and that "[t]he most common reason given is the difficulty, if not impossibility, of assessing damages." Trotzig, *The Defective Child and the Actions for Wrongful Life and Wrongful Birth,* 14 Fam.L.Q. 15, 40 (1980). A similar conclusion was reached by another author.

In summary, a historical review of wrongful life claims indicates that they have not been received favorably by the courts; seven of the eight jurisdictions that have considered wrongful life claims do not presently recognize their validity, and one jurisdiction remains unsettled. Dissatisfied life and unplanned life claims have been uniformly unsuccessful. The overwhelming majority of these decisions deny the claims because of conceptual difficulties in the calculation of damages created by the perceived necessity of comparing impaired life with nonexistence, based on considerations of the sanctity of all human life notwithstanding incidental defects. The few cases recognizing wrongful life claims have focused on the pain and suffering attributable to the defect, without convincingly rebutting the theoretical or philosophical problems attendant to the damage calculation.

Rogers, III, *Wrongful Life and Wrongful Birth: Medical Malpractice In Genetic Counseling and Prenatal Testing,* 33 S.C. L.Rev. 713, 729–30 (1982). (Footnotes omitted.)

We share the view of the overwhelming majority of courts and conclude that the trial court reached the correct result in dismissing the count for wrongful life brought by the mother as next friend of the child, even though the trial court may have done so for another reason.

## B

### The Wrongful Birth Action

■ Plaintiff parents suing for wrongful birth have met with more and varied degrees of success. All courts permitting recovery have been presented with serious problems. Damages for pain and suffering of the parents have been rejected by the highest courts of New York, *Becker v. Schwartz,* 46 N.Y.2d 401, 413, 413 N.Y.S.2d 895, 901, 386 N.E.2d 807, 813 (1978) and Texas, *Jacobs v. Theimer,* 519 S.W.2d 846, 849 (Tex.1975), but have been allowed in New Jersey, *Berman v. Allen,* 80 N.J. 421, 404 A.2d 8, 14–15 (1979).

The some seventeen states [2] permitting recovery have justified their action on grounds such as

---

2017 (1987); Bell, *Legislative Intrusions Into the Common Law of Medical Malpractice: Thoughts About the Deterrent Effect of Tort Liability,* 35 Syracuse L.Rev. 939 (1984); Collins, *An Overview and Analysis: Prenatal Torts, Preconception Torts, Wrongful Life, Wrongful Death and Wrongful Birth: Time for a New Framework,* 22 J.Fam.L. 677 (1983–1984); Rogers III, *Wrongful Life and Wrongful Birth: Medical Malpractice In Genetic Counseling and Prenatal Testing,* 33 S.C. L.Rev. 713 (1982); Trotzig, *The Defective Child*

*and the Actions for Wrongful Life and Wrongful Birth,* 14 Fam.L.Q. 15 (1980).

**2.** Note, *Wrongful Birth Actions: The Case Against Legislative Curtailment,* 100 Harv.L.Rev. 2017, 2018 n. 5 (1987) lists the following jurisdictions recognizing a cause of action for wrongful birth: Alabama, *see Robak v. United States,* 658 F.2d 471 (7th Cir.1981); California, *see Andalon v. Superior Court,* 162 Cal.App.3d 600, 208 Cal.Rptr. 899 (1984); Florida, *see*

1) encouraging an attitude of reverence for human life; 2) holding parents responsible for the care of children they bring into society; 3) improving the quality of human existence; 4) protecting the procreative rights of individuals; 5) holding tortfeasors liable for damages proximately caused by their actions; and 6) encouraging competent medical care for all.

Collins, *An Overview and Analysis: Prenatal Torts, Preconception Torts, Wrongful Life, Wrongful Death, and Wrongful Birth: Time for a New Framework,* 22 J.Fam.L. 677, 695 (1983–1984). The cases have gone all over the place on damages. *See* Collins, *supra* at 696–700. Many of the damage discussions sound far more like discussion of public policy doctrine considerations rather than discussions of the traditional damage rules. Those who give lip service to the so-called benefit—offset rule, offsetting the benefit of having the child against traditional tort damages, put the parents in the position of having to prove that the child is neither wanted nor is of benefit to them if they are to recover substantial damages. This illustrates the potential damage that can be done to the already defective child and the near impossibility of dealing with the problem in terms of traditional tort-damage rules.

A reading of all of the cases persuades us that the real underlying problem in these cases stems from the fact that the courts have either closed their eyes to traditional tort causation, or have leaped over causation. Most courts have tried to cover the leap over causation by blending some causation language into their discussion of damages or into their discussions of public policy considerations.

The most thorough analysis and discussion of causation found in any of the prior cases is the dissenting in part and concurring in part opinion of Judge Wachtler appearing in the early case of *Becker v. Schwartz,* 46 N.Y.2d 401, 417–422, 413 N.Y.S.2d 895, 904–907, 386 N.E.2d 807, 816–19 (1978), where he concurred in dismissing the wrongful life claim and said that the wrongful birth claim also should be dismissed.

A doctor who provides prenatal care to an expectant mother should not be held liable if the child is born with a genetic defect. Any attempt to find the physician responsible, even to a limited extent, for an injury which the child unquestionably inherited from his parents, requires a distortion or abandonment of fundamental legal principles and recognition, by the courts, of controversial rights and duties more appropriate for consideration and debate by a legislative body. These problems, which are always present when the child born with a genetic disorder seeks to hold the doctor responsible, are compounded when the parents seek compensation, on their own behalf, for collateral injuries occasioned by emotional distress or the increased cost of caring for a handicapped child.

The heart of the problem in these cases is that the physician cannot be said to have caused the defect. The disorder is genetic and not the result of any injury negligently inflicted by the doctor. In addition it is incurable and was incurable from the moment of conception. Thus the doctor's alleged negligent failure to

*Moores v. Lucas,* 405 So.2d 1022 (Fla.Dist.Ct. App.1981); Illinois, *see Goldberg v. Ruskin,* 128 Ill.App.3d 1029, 84 Ill.Dec. 1, 471 N.E.2d 530 (1984), *aff'd,* 113 Ill.2d 482, 101 Ill.Dec. 818, 499 N.E.2d 406 (1986); Maine, *see* Me.Rev.Stat.Ann. tit. 24, § 2931(2) (1986); Michigan, *see Eisbrenner v. Stanley,* 106 Mich.App. 357, 308 N.W.2d 209 (1981); New Hampshire, *see Smith v. Cote,* 128 N.H. 231, 513 A.2d 341 (1986); New Jersey, *see Berman v. Allan,* 80 N.J. 421, 404 A.2d 8 (1979); New York, *see Becker v. Schwartz,* 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); North Carolina, *see Gallagher v. Duke Univ.,* 638 F.Supp. 979 (M.D.N.C.1986); Pennsylvania, *see Gildiner v. Thomas Jefferson Univ. Hosp.,* 451 F.Supp. 692 (E.D.Pa.1978); South Carolina, *see Phillips v. United States,* 508 F.Supp. 544 (D.S.C.1981); Texas, *see Jacobs v. Theimer,* 519 S.W.2d 846 (Tex.1975); Virginia, *see Naccash v. Burger,* 223 Va. 406, 290 S.E.2d 825 (1982); Washington, *see Harbeson v. Parke-Davis, Inc.,* 98 Wash.2d 460, 656 P.2d 483 (1983), *aff'd,* 746 F.2d 517 (9th Cir.1984); West Virginia, *see Jennifer S. v. Kirdnual,* 332 S.E.2d 872 (W.Va.1985); and Wisconsin, *see Dumer v. St. Michael's Hosp.,* 69 Wis.2d 766, 233 N.W.2d 372 (1975).

detect it during prenatal examination cannot be considered a cause of the condition by analogy to those cases in which the doctor has failed to make a timely diagnosis of a curable disease. The child's handicap is an inexorable result of conception and birth.

... Even if we assume, as we must on a motion to dismiss the complaint, that the parents would have made all the difficult decisions leading to an abortion—a conclusion which could be certain, if ever, only in retrospect—we must still go to great lengths to find that the doctor's failure to detect the defect was the cause, indeed the proximate cause, of the child's handicapped life. And the causal relationship is even more remote when the parents seek to recover for an injury they have suffered as a result of the alleged injury to the child.

But the problems extend beyond causation. . . .

Since the infant's suit must be dismissed, the parents' cause of action for the costs of "special treatment, teaching care, medical services, aid and assistance throughout the lifetime of the infant" should be dismissed as well. A parent's right to recover expenses occasioned by an injury to the child "is based upon and arises out of the negligence which causes the injury to the child. The injury to the child results in a twofold action, one for the father and one for the child." [Citations omitted.] Thus the parents' suit for the pecuniary losses is derivative; it cannot stand alone. (*Reilly v. Rawleigh,* 245 App.Div. 190, 281 N.Y.S. 366; *Kotary v. Spencer Speedway,* 47 A.D.2d 127, 365 N.Y.S.2d 87; *O'Hearn v. O'Hearn,* 55 A.D.2d 766, 389 N.Y.S.2d 651; cf. *Maxson v. Tomek,* 244 App.Div. 604, 280 N.Y.S. 319, mot. for lv. to app. den. 268 N.Y. 726). If the child cannot establish a good cause of action to recovery for its injury, the parents' suit for collateral losses, flowing from the injury to the child, must also fail (see, e.g., *Gleich v. Volpe,* 32 N.Y.2d 517, 346 N.Y. S.2d 806, 300 N.E.2d 148; *Warmsley v. Long Is. Banana Co.,* 35 N.Y.2d 953, 365 N.Y.S.2d 173, 324 N.E.2d 553; see, also, *Glendenning v. Feld,* 285 App.Div. 604, 139 N.Y.S.2d 670).

The majority disregarding this principle, has held instead that the doctor owed a duty directly to the parents and thus they may recover, for a violation of their own rights, the special costs of raising the handicapped child. This involves the creation of a completely new tort.

. . . .

In sum, by holding the doctor responsible for the birth of a genetically handicapped child, and thus obligated to pay most, if not all, of the costs of lifetime care and support, the court has created a kind of medical paternity suit. It is a tort without precedent, and at variance with existing precedents both old and new. Indeed the members of the majority are divided among themselves as to what principle of law requires the doctor to pay damages in this case. The limits of this new liability cannot be predicted. But if it is to be limited at all it would appear that it can only be confined by drawing arbitrary and artificial boundaries which a majority of the court consider popular or desirable. This alone should be sufficient to indicate that these cases pose a problem which can only be properly resolved by a legislative body, and not by courts of law.

*Becker v. Schwartz,* 46 N.Y.2d 401, 417–22, 413 N.Y.S.2d 895, 904–07, 386 N.E.2d 807, 816–19 (1978), (Wachtler, J. concurring in part and dissenting in part).

We find no case which has directly and effectively dealt with the problems of causation raised by Judge Wachtler. All, in our opinion, have either closed their eyes to the requirements of causation; or, have blended causation into social policy reasons for permitting recovery; or have blended causation into the discussion of the types of damage permitted to be recovered.

Those who have practiced family law during the past two decades have with some frequency become painfully aware of the difficulty of satisfactorily determining and knowing the real reason why a given woman may or may not choose to have an abortion. In the wrongful birth action, the

right to recovery is based solely on the woman testifying, long after the fact and when it is in her financial interest to do so, that she would have chosen to abort if the physician had but told her of the amniocentesis test. The percentage of women who under pressure refuse to consider abortion, whether for reasons of religious belief, strong motherly instincts, or for other reasons, is sometimes astounding. It would seem that testimony either more verifiable based upon experience or more verifiable by some objective standard should be required as the basis for any action for substantial damages.

A finding by this Court today that we will not create and will not recognize either a new tort for wrongful life or for wrongful birth is in our opinion totally compatible with the policy considerations expressed by our legislature in attempting to limit the statute of limitations for malpractice actions, § 516.105, RSMo 1984;[3] attempting to place a cap or limit on malpractice recoveries, §§ 538.205–.235, RSMo 1986; and attempting legislative tort reform in general, H.B. 700, Laws of Mo., 1987 p. 792.

Having denied the existence in this state of either a cause of action for wrongful life or for wrongful birth, it is unnecessary for us to reach the question of the constitutionality of § 188.130, RSMo 1986.

The trial court reached a correct result on both dismissals, although for a different reason.

The action of the trial court in dismissing both the count for wrongful life and the count for wrongful birth is affirmed.

BLACKMAR, J., concurs in separate opinion.

ROBERTSON, J., concurs in separate opinion filed.

DONNELLY, J., concurs and concurs in separate concurring opinion of ROBERTSON, J.

3. Section 516.105 was held unconstitutional as it applied to minors in *Strahler v. St. Luke's Hospi-*

HIGGINS, J., dissents in separate opinion filed.

BILLINGS, C.J., dissents in separate opinion filed and concurs in separate dissenting opinion of HIGGINS, J.

RENDLEN, J., dissents and concurs in separate dissenting opinion of HIGGINS, J.

BLACKMAR, Judge, concurring.

I reviewed Judge Higgins' dissenting opinion and the transcript of the oral argument, along with the motion for rehearing. I agree with Judge Higgins that the petition sufficiently would plead a claim of malpractice in favor of appellant Barbara Wilson, if the element of damages adequately appeared. At oral argument, however, there was an exchange with plaintiffs' counsel as follows:

Q. Is the only damage that you claim damage based on the thought that had this test been performed it would have indicated circumstances which would have led your client to have an abortion?

A. That's right, your Honor.

Q. That's the sole damage claim you make?

A. That's right. She has so testified that had she been advised she would have had an abortion....

I agree with the principal opinion that our Court should not award damages of the kind claimed. It is appropriate that counsel be bound by statements during oral argument. These show that Barbara Wilson cannot maintain the only claim she asserts, and so was not aggrieved by the judgment.

ROBERTSON, Judge, concurring.

The principal opinion declines to recognize causes of action for wrongful life and wrongful birth in this state. I concur completely. The principal opinion's conclusion that Section 188.130, RSMo 1986, is not applicable is entirely correct. Yet even

*tal,* 706 S.W.2d 7 (Mo. banc 1986).

were we faced with legislative silence on this issue and even if the principal opinion's causation discussion on the wrongful birth issue were not so irrefutable and the impossibility of determining damages in wrongful life cases so obvious, I would not vote to recognize either cause of action.

Courts are ill-equipped to render the policy decisions which the adoption of these causes of action require. Courts unquestionably possess the authority under the common law to recognize new causes of action. That some courts have stepped into the void and allowed such actions is no reason for this Court to follow. Authority is but the threshold consideration. The more critical question is this: Should judges decide this issue? I adhere to the view that choices which dramatically alter the landscape of societal relationships are best made in the crucible of the free-ranging debate and broad fact-gathering capacity in which representative assemblies regularly indulge. Unlike judges, members of legislatures are directly accountable to an attentive electorate. The people are the ultimate arbiters of societal policy; their elected representatives should make such momentous choices, not judges.

The principal opinion cites the impossibility of assessing damages in wrongful life actions. Speculation in this arena, however, is not limited to the question of damages. Wrongful life actions ask juries to tread where mortals cannot go, to weigh the *cost* of life—even handicapped life—against the *benefit* of no life at all. Theologians, philosophers, theologoumenants and yes, even judges, sink quickly and irretrievably into a quagmire when they stray into questions such as these. The difficulties are endless, the conundra profound.

Today we wisely choose to leave the future of these issues in legislative hands.

I concur in the principal opinion.

HIGGINS, Judge, dissenting.

With due respect for the principal opinion, I find myself in dissent for the reasons that follow.

On defendants' motion to dismiss, plaintiffs' petition (First Amended Petition for Damages) was dismissed by the trial court for failure to state a cause of action. I believe this presents the only question ripe for discussion in this case.

On a motion to dismiss for failure to state a cause of action, the reviewing court accepts as true the facts properly pleaded, giving the averments a liberal construction, and making those reasonable inferences fairly deductible from the facts stated. *Stiffelman v. Abrams*, 655 S.W.2d 522 (Mo. banc 1983); *Concerned Parents v. Caruthersville School District*, 548 S.W.2d 554 (Mo. banc 1977). In this judgment of sufficiency of the petition, the Court is not concerned with what the evidence may prove. *Empiregas, Inc., of Noel v. Hoover Ball & Bearing Co.*, 507 S.W.2d 657 (Mo. banc 1974).

Plaintiffs Carl and Barbara Wilson are the parents of plaintiff Robert Wilson, born June 23, 1983, afflicted with Down's Syndrome. Defendant Donald Kuenzi is a medical doctor specializing in family practice including obstetrics and gynecology in an association of Kuenzi, Hayes, Kirkland and Wilson, M.D.s, Inc., in Gladstone, Clay County, Missouri.

Plaintiffs' petition is in two counts, I for the minor's claim and II for the parents' claim.

They alleged that defendants were negligent:

1. By failing to advise and warn the mother that she was statistically at risk to give birth to a Down's Syndrome child because of her advanced age at conception;

2. By failing to offer or perform the test known as amniocentesis;

3. By failing to offer or perform genetic counseling;

4. By failing to refer the mother to a specialist for genetic counseling;

5. By failing to disclose facts to the mother from which she could make an informed choice to terminate her pregnancy;

6. By failing generally to adhere to the requisite standard of care required of health care providers;

7. That as a direct and proximate result of defendant's negligence, plaintiffs were damaged.

Following entry of the dismissal of the First Amended Petition, plaintiffs moved, unsuccessfully, to set aside the dismissal and secure leave to file a Second Amended Petition which alleged that defendants were negligent:

1. By realizing the mother was at risk to give birth to a mentally retarded child, or legally held to realize the risk;

2. By knowing the mother did not realize the risk, and failing to advise and warn her of the risk;

3. By failing to advise the mother of the existence and availability of amniocentesis;

4. By failing to advise the mother of pertinent facts concerning her pregnancy thereby denying her the opportunity to make an informed choice with respect to termination of her pregnancy;

5. By failing generally to adhere to the requisite standard of care required of health providers;

6. By failing to advise the mother of genetic counseling and testing with respect to determining whether to carry her pregnancy to full term;

7. By failing to advise the mother fully thereby depriving her of opportunity to make an informed choice with respect to her pregnancy;

8. That as a direct result of defendants' negligence, plaintiffs were damaged.

In my opinion, plaintiffs' petition survives defendant's Motion to Dismiss under the tests of *Stiffelman, Concerned Parents* and *Empiregas* and the standard enunciated in *Aiken v. Clary,* 396 S.W.2d 668 (Mo.1965), that a doctor who fails to adhere to the standard of reasonable care is guilty of malpractice whether consisting of improper care and treatment or of failure to inform sufficiently to enable the patient to make a judgment and give informed consent with respect to treatment. In short, the pleading demonstrates the requisite elements of a cause of action of duty, breach of duty, proximate cause and damage. Although the ascertainment of

damages may be difficult in this case, the alleged tortfeasor cannot escape liability simply because damages cannot be measured with exactness. *Ohlendorf v. Feinstein,* 670 S.W.2d 930 (Mo.App.1984).

Apropos this case is the observation by Professor Prosser:

> There is no necessity whatever that a tort must have a name. New and nameless torts are being recognized constantly, and the progress of the common law is marked by many cases of first impression, in which the court has struck out boldly to create a new cause of action, where none had been recognized before. The intentional infliction of mental suffering, the obstruction of the plaintiff's right to go where he likes, the invasion of his right of privacy, the denial of his right to vote, the conveyance of land to defeat a title, the infliction of prenatal injuries, and the alienation of the affections of a parent, to name only a few instances, could not be fitted into any accepted classifications when they first arose, but nevertheless have been held to be torts. The law of torts is anything but static, and the limits of its development are never set. When it becomes clear that the plaintiff's interests are entitled to legal protection against the conduct of the defendant, the mere fact that the claim is novel will not of itself operate as a bar to the remedy.

Prosser, The Law of Torts, pages 3–4 (3rd Ed.1964).

I would reverse the judgment of dismissal and remand this case for further proceedings.

BILLINGS, Chief Justice, dissenting.

The principal opinion would exonerate a physician guilty of gross negligence, or even an intentional wrong, and preclude and foreclose an action for wrongful life or wrongful birth. The conclusions concerning causation and assessment of damages ignore the fact that both common law and statutory law have demonstrated, time and time again, that these "reasons" are not sound; further, respectable courts in other

jurisdictions have demonstrated these shibboleths are not insurmountable. A person may very well be faced with a difficult standard of proof, but our system of justice should at least afford one an opportunity to present evidence of injury, causation and damages.

The principal opinion ignores the equal protection, due process, open courts, and trial by jury provisions of the Constitution of Missouri, as well as similar constitutional guarantees found in the United States Constitution. This State's guarantees are:

"... that all persons are created equal and are entitled to equal rights and opportunities under the law...."

*Mo. Const. Art. 1, § 2*

"That no person shall be deprived of life, liberty or property without due process of law."

*Mo. Const. Art. 1, § 10*

"That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

*Mo. Const. Art. 1, § 14*

"That the right of trial by jury as heretofore enjoyed shall remain inviolate...."

*Mo. Const. Art. 1, § 22(a)*

The open courts provision provides a forum for plaintiffs, as persons allegedly wronged by defendant, to present evidence to a jury in support of their allegations, rather than be barred from the courthouse where others are permitted to present their claims. Perceived difficulty of proof should not override constitutional guarantees.

The emotional and controversial issue of abortion should not control or influence the decision in this case. Neither should the enactment of so-called "tort reform" legislation—the constitutionality of which must await another day.

I would hold the common law governs this case and reverse the judgment of the trial court dismissing the action; alternatively, that *§ 188.130, RSMo 1986*, violates the Constitution of Missouri.